The Patent Trial and Appeal Board over a series of four final written decisions spanning hundreds of pages got a lot of things right, but there are three discrete issues that want this court's attention. The first one is on conception, and specifically the corroboration of one of the three inventors' conception testimony that served to remove two of our pieces of prior art as prior art. We'll talk about that. The other two issues are related. They deal with obviousness grounds that we presented where the board, in assessing a particular limitation, would not consider our obviousness position because they said it wasn't raised. I want to start first with the conception and corroboration. Mr. Nguyen is one of the three inventors. He and only he came into the board and provided testimony on conception. The only corroborating evidence that was presented supporting his testimony were a series of December 2003 drawings and an April 2004 prototype. The board found correctly that the April 2004 prototype did not embody the invention. It was not corroborating. As to the set of drawings, only one of those drawings showed a complete container. These claims are directed to a container with two composite shells and a VIP vacuum insulated panel in between them. And the December 2003 complete container drawing did not embody the invention. Do I remember correctly, though, that the person who created those CAD drawings testified that all of the drawings showed the same product? And they were all something that, even though there was only one, I think it's the last one, that shows the entire container, they all went together to show the container. His testimony was for purposes of authenticating the documents as documents created at the time in December 2003. And the only testimony about what the documents showed was the testimony from Mr. Nguyen corroborated, not corroborated, but authenticated by Mr. Bowles, the gentleman to whom you're speaking about. But the only evidence of those drawings was that the complete drawing, the board never found that it embodied the invention, and it doesn't. The only drawings that the board relied on were of a single panel assembly. Not even a full shell. 7182 is the layout drawing, and then some pages before that are the panel drawings that the board relied on. 7160 is the overall panel, and then there were three other drawings. They relied on four drawings relating to a pallet stripper project, not the container, and it didn't have the full invention. The conception requirement in this court's well-established law requires a definite and permanent idea. But I'm not understanding. There's an overall drawing, and then there are drawings that describe subsets, portions of the overall drawing, and using the subset drawings together with the overall drawing is what the board said corroborated the conception testimony, right? The board did not rely on the overall drawing, what's called the layout drawing. The board did not rely on that, and the evidence of our view does not show that those individual panel drawings... Yeah, I don't think they're contesting that. So they're saying that the individual drawings considered to be subsets of the overall do provide corroboration, right? The board did say that. The problem with the board's analysis is that conception requires a complete and operative invention as it's hereafter applied in practice. But then isn't the conception evidence from the testimony, and it's then corroborated by the drawings and other testimony? So the question is, under the rule of reason, you know, just let's take a break for a minute. Could you tell the students in the classroom why we're talking about corroboration and what it is? Yes, I'd be glad to, and I'll continue to pitch this way. So when you have prior art, sometimes an inventor will try to remove those as prior art by saying, well, I invented my invention before those prior art references, meaning they're not prior art. But an inventor can't just come in and say, I did it, because that doesn't have hallmarks of trustworthiness. And so you need corroboration from other evidence. The corroborating evidence is analyzed under a rule of reason, as Judge Stoltz just mentioned. And if it's corroborated, that there's an earlier conception evidence corroborated, then indeed those later references will not be prior art. And here our argument is that the conception requires the complete and operative invention. The corroboration needs to be of the complete and operative invention, not one snippet of it. So thank you for that explanation. So in this case, we've got the inventor saying, here, I invented this well before the priority date of the prior art. I'm looking, and here's, you know, I remember I made it. This is when I conceived of it, and it was the complete invention. And then there's some drawings that corroborate this testimony. They don't, in and of themselves, have to demonstrate the entire conception, do they? They just have to be sufficient to satisfy the indicia of trustworthiness of his testimony, right? The answer is yes. The problem with the evidence presented here is when you look at the other evidence that was presented around the same time and in the months to follow, which were months after that publication made the prior art, meaning too late, those documents make clear that the invention was not yet solidified. They are anti-corroborative. They show the opposite. Because later there was a prototype made that didn't have all the elements of the claim. That is something that detracts from his testimony. But isn't that a credibility issue? Well, there's more, because there's also a memo that's after the key date for the prior art references, and the memo only lists a single shell, not the two shells that are required by the claims. And the drawing of the full invention with the two composite shells and the VIP installation layer in between them did not occur until January of 2005. Well, if we had the drawing with everything in it prior to the date that it's needed for, we wouldn't need the testimony or anything. It would be prior art. So the point of the rule of reason is just is there sufficient evidence to think what the inventor said is correct? And I know you're saying, well, there's other evidence that suggests he's not. That's a substantial evidence question, though, right? I think that is a substantial evidence question. And the board pointed to these other drawings and said, looking at them in context, these are evidence to support his testimony. And if that's evidence, and it is, how can we reverse on a substantial evidence ground? There's some evidence for one side. You said there's some evidence for you. Under the law, when the conception requires the complete and operative invention as it's hereafter applied in practice, our position is, under the law, the corroboration needs to be of the complete and operative invention and not one snippet of it. Do you feel that the rule of reason should be more strict when we're talking about conception? It doesn't need to be more strict, but the rule of reason in analyzing the corroborative evidence says the corroborative evidence must corroborate the conception of the complete and operative invention, not one piece of it. I have the rule of reason, which is just looking at it more broadly than that and looking to see whether there's enough corroboration to show that, to support his view of the facts, why isn't that enough? It doesn't have to be each and every element. Our position is it needs to be more than, it wasn't even a full box-sized shell like the claims requires. It's one portion of a panel, and it's our position that it's not enough. I do want to turn to our other two appellate issues, which are related, and these are ones where I deal with the Sinclair prior art preference and the Zupanchick prior art preference. Our grounds of unpatenability dealt with obviousness. There's only obviousness for these grounds. And the board, well, let me back up. In our petitions, we said the prior art teaches X, and I'm out of time at this point. I'm happy to dig into it. The prior art teaches X. CSAFE in response came in and said, no, it doesn't teach it. In reply, we said, well, it does teach it. You're wrong. But even if it doesn't teach it, it would have been obvious to a person of skill in the art. Our ground of unpatenability is obviousness. We say it teaches directly. You disagree. Our reply briefly say, pointing to the exact same portions of the reference, you're wrong. It does teach it in any event. It's obviousness. But the board in both instances, for the Sinclair grounds and the Zupanchick grounds, said, we're not going to let you present an obviousness argument. That's a new argument. That was wrong as a matter of law. The board only considered our obviousness argument as if it were anticipation. But the ground was obviousness. This court should remand for the board to consider both our Sinclair grounds and our Zupanchick grounds because us saying that the reference teaches X certainly subsumes obviousness when the entire ground of unpatenability is obviousness. Can I ask you a question? Are you emphasizing the use of the word teaches? Do you see a difference between teaches and discloses? Not only because the board used the word teaches. I believe the petition used the word teaches. Discloses teaches, in this context, I think doesn't make a difference. I'm just using the word the board used. And so instead, your argument is that because it was obviousness, a person reading your petition should have known that you were saying it teaches it. Or if it doesn't, it would have been obvious to my mind. Right. For each and every element? For the one in particular that the board refused to consider, yes, for each and every element. But there's other elements where you said that the prior single reference taught it in your accommodation. And so they'd have to make that presumption for all of those as well. Yes. Yes. In this instance, with both the Zupanchick grounds and the Sinclair grounds, it was just one element that tripped up the board. But this court should remand for them to actually consider our obviousness ground under those two references. I'm into my rebuttal. I'd like to preserve that. I'm happy to answer any further questions. OK. You can preserve it. Thank you. Mr. Cunningham. Good morning, honors. Robert Cunningham, defendant of the West, on behalf of CSAFE. Respectfully, counsel on the other side said there are three issues for the panelists' attention. There is a cross appeal. And I'd like to start with some of the issues that we raised on that front. On the issue of refrigeration system and the proper claim construction, as this court rightly pointed out in the Columbia University case, the only meaning that matters in claim construction is the meaning and the context of the patent. Here we have a patent that every single time the claim term refrigeration or refrigerations- And the court said it incorporated other references which talked about passive refrigeration. Correct. It does incorporate other references. But the case law says that when you look at incorporation by reference, you have to pay attention to why it's being incorporated. Because incorporation by reference does not change the invention of the prior art into the invention of the patent itself. And so when we look at what the patent says, those incorporations by reference are in the background of the invention, the very first paragraph. And it says there are temperature-controlled containers in the prior art, such as these incorporated by reference, and it's desirable that they have heating and or cooling needs. It does not use the term refrigeration system. It does not endorse those containers as teaching what refrigeration systems are. Instead, as it continues, continuing in the background and then in the summary, is it talks about how there is a need for tighter temperature control. And that's what the invention is about, having a nice tight temperature control range so that you can ship vaccines and biologics around the world. And what the patent talks about in the summary and in the background is active compressor-based refrigeration systems. In the reply papers, for example, Envirotainer points out that there are advantages. They say one of them is only that there is this specific structural and solution concept. And they point to Column 70 by the patent. If you read what's written there, it's clear that the purpose of that beneficial design is to allow for a better refrigeration system. It talks about how it allows the preservation of battery life to power the compressor, which is part of refrigeration. At the end of the day, the only type of refrigeration system or cooling means that is actually discussed in detail in this patent are active systems. We've said again and again the fact that the embodiments are limited in a particular respect doesn't mean that the claim is limited to the embodiments. That is absolutely correct, Your Honor. But that's not what we're dealing with here. This is not a single embodiment being incorporated in the claims. This is a patent telling you that our invention is about temperature-controlled containers that use active refrigeration systems. That's what this patent is all about. Your Honor, I'd like to turn to the Woffler grounds. So there are three issues that require reversal. The issue of shells, motivation to combine, and reasonable expectation of success. On the question of shells, the dispositive question is whether Woffler's foam insulation, which it calls a shell, is the same as what the claims call a shell. And when we look at the claims, what they require is an inner shell, an outer shell, and then insulation confined between them. In Woffler, what it uses is the term shell to refer to the insulation itself, and then it confines that insulation with what it calls casings. So what we have is a situation where the term shell is being used to describe two fundamentally different things. And the claims of the patents in Sioux make very clear that the shell is not the insulation, it's the thing confining it, or the things confining it. Do I remember correctly that Woffler itself has a paragraph where it says you could get rid of the two walls into which the insulation is actually molded, that that could stand on its own? In other words, the shell in Woffler can stand on its own without any additional structure. I don't recall that passage from Woffler, Your Honor. I don't believe that's an argument that I've heard raised in the course of this proceeding, either below or on appeal. So I don't believe that is the case. I think what you might be referring to, Your Honor, is in their reply papers. They mentioned the Sinclair reference, which talks about using insulation in a structural capacity. But I don't believe Woffler itself tells us that. On the issue of motivation to combine, what we have in reasonable expectation of success is that I want to set aside the... Can I read it to you? I actually found it. It's a page... maybe you could explain to me how I'm misunderstanding it. It's in page A3400, and it says, It would be possible to dispense with the inner and or outer cover 2B, 2C by screening the housing in an appropriate mold. The housing... maybe that's not it. But... Element 2A standing on its own. I'm sorry, I don't... my copy here does not have the appendix. Do you have the W.O. site at the top of the page on it? That's all right. I think I might have pointed to the wrong thing. Okay. I will turn you to it if I find the right one. Thank you. Okay. I do think that that... Okay. I'm sorry, Your Honor. On the motivation to combine in reasonable expectation of success issue, I want to set aside for the moment the confusion about what it is that the petitioner, or my retainer, argued that the combination is. Because what they made clear at this point is that the combination is the law floor covers one omission panel that is complete, a VIP, and then a second omission panel inside the second law floor cover. So they've acknowledged that it is a system where there are six covers and three layers of insulation. We put an image of this at page six of our server plan. On the motivation to combine question, what they're suggesting is that their combination has two omission panels. And fundamentally what omission tells us is that its panels are individually structurally complete. There is no reason to put the two of them next to each other. In the motivation to combine section of their petition, they never suggest or acknowledge that there would be any benefit or any... that there's any reason to put the two of them together. And then when they do their claim analysis, they avoid this issue by looking at each claim element individually. They say in claim element 1A, your record is the shell. We put in an omission panel. Element 1B, your record is the second shell. We put in a panel. They never address why there would be a reason to have two. And in fact, Onishi tells us there is no reason to have two. So in our view, that shows very clearly there is no substantial evidence for motivation to combine. On reasonable expectation of success, they have been steadfast that the manufacturing process of Woffler is what would be maintained and what would be used in their combination. And what Woffler tells us the manufacturing process is, is you have two casings. You expand foam into the gap between them. You then move one of the casings to create a second gap, and you expand foam in again. They never explain to us in the one or two sentences in the petition or in the supporting expert declaration how that process can be applied to a structurally complete panel, especially a structurally complete panel that uses a resin process that is sticky and doesn't allow for further expansion. So it's just an open question, and the petition makes no attempt to answer that question. Now, the board's findings on these issues, this is where the confusion part comes in. The board's findings on motivation to combine is where the board consistently uses the term FRPs as opposed to FRP panels. And I would direct your honors in particular to appendix page 295 in the board's decision where they say in the first part of the paragraph, they criticize our characterization. Patent owners would say, we believe patent owners talk about a design that, quote, includes FRPs on the outside and a core made of foam material. Fundamentally, that is an Onishi panel. FRPs, skin on the outside, foam in the middle. And then they say, which differs from petitioner's proposed combination that replaces Woffler's dual shelves with FRPs. So in the same sentence, they're using the term FRPs to distinguish what Envirotainer has now made very clear their argument is, a panel plus a panel, to now say, no, in this situation, we're talking about just the skins. And the reason that I bring that up, your honors, is not because you need to actually decide that issue and whether the board understand it or not. I bring it up because there's no reason to give any weight or credibility to the board's motivation to design, motivation to combine decision, because they fundamentally changed what the combination was. Your honors, I believe I have reserved three minutes, so I'd just like to briefly touch on the conception and Sinclair and DuPantis issues. On the conception question, every factual issue that was raised by counsel on either side was directly addressed by the board. The board spent over six or seven pages going through the substance of the conception decision, recognizing that this question of two shells was the core dispute between the parties. This notion of anti-corroboration flies in the face of decades of law on the rule of reason and what corroboration requires. As your honors pointed out, corroboration does not require showing every single claim element. It requires assessing the credibility of the inventor's testimony. And here, we have inventor testimony corroborated by 23 contemporaneous documents, including eight that go to the exact issue in question, the two-shell design. On the Sinclair and DuPantis issues, counsel directly acknowledged, and your honor, you hit on the key question there. In their petition, they said, teach. Then in reply, they said, teach or, well, maybe obvious to modify. At the end of the day, though, it's the board's discretion to look at the petition and what it teaches and then decide whether they made that argument or not. That is an abusive discretion standard. Here, there is no indication that that discretion was abused. I would also just like to point out on DuPantis and Sinclair that even taking their argument as it stands today, as we understand it, there's no substantial evidence to find the obviousness on these grounds because in the Sinclair reference, they concede as they must that the two casings are separate embodiments. One embodiment has an inner casing. One has an outer casing. Are you addressing the obviousness argument that the board did not address? I'm addressing one that they put into their papers. We cannot decide that in the first instance, can we? Because we are not fact-finders. That would be something that we would have to lean in to the board to decide. Is that right? I absolutely agree with you, Your Honor, and I don't, so I won't even suggest. If there are no further questions, thank you very much for your time. Okay. Mr. Bradley? Very quickly, counsel said there's no abusive discretion in the board's treatment of our Sinclair and Zupancic obviousness grounds. The board's refusal to address obviousness when our grounds are obviousness because the board said we did not address obviousness makes no sense. It's abusive discretion, and this court should demand for the board to consider the Sinclair grounds and the Zupancic grounds. Now on their appeal, they led with the argument of the refrigeration system. They did not invent a refrigeration system for shipping containers or otherwise. And as some of the questions indicated to me, the examples they give from the specification are mere examples, preferably in this embodiment, that sort of thing. There's no statement of the invention is, where sometimes words like that can make a difference. And as Judge Dyke commented, the incorporated, by reference, Broussard patent was part of the intrinsic record. It discloses passive refrigeration systems using carbon dioxide, dry ice, things like that. Their refrigeration system claim construction argument should be rejected. The board got it exactly right. As for Loeffler, Judge Stoll, you had it right on HBX 3400. So Loeffler has two foam shells with a VIP insulation in between them. Loeffler had everything we needed for the claims. The only difference was Loeffler's structural shells, they were composite. And the claims say composite. So we used Onishi's panels to upgrade or modify the Loeffler shells to make them composite. It was as simple as that. Do I understand correctly that they're talking about injection welding in Loeffler? Is that clear? Part of it, part of what's going on in Loeffler, but the part that matters here, and as the board found supported by substantial evidence, is that Loeffler has two shells with a VIP layer in between them, just like the claims require. It's a carbon container, no doubt about it. The challenge with Loeffler, if there was one, was it wasn't a composite, so we used the Onishi panels to upgrade the Loeffler shells. The Loeffler shells, to your Honor, Judge Full's point, are indeed structural, and APTX 3400 is where Loeffler itself says so. Does that mean it could remove the covers to the M2C? It does, and it goes on to say that this housing is properly designed as an expanded single shell. On the previous page it talks about instead using two shells. But it goes on to say, and do it in such a way that the housing is inherently stable without additional structural elements, i.e. is designed as a self-supporting structure, which means that the Loeffler shells surrounding the VIP insulation layer are themselves structural. We used the Onishi panels, which have composite, to upgrade the Loeffler shells. It was as simple as that. As for motivation to combine and reasonable expectations of success, substantial evidence clearly supports the Board's findings. The main thing you need to read is that APTX 296 to 297, where the Board said, we find Petitioner's stated advantage of Onishi's panels in Loeffler's walls largely unrebutted and persuasive. Our expert talked about in his declaration about how combining the Loeffler with Onishi achieves reinforcements, stability, higher strength, so on and so forth. I'm not telling that it's absolutely supported by substantial evidence. Okay, thank you. Mr. Coonerhan. Thank you. So, Your Honor, just very briefly on the Loeffler point. Your counsel framed it as something like, it was very simple. We took Loeffler and we introduced the Onishi FRP. That's at least what I heard. That's different than what they argued in the petition. They argued the entire panel. And the entire panel is a multi-layered design. On the issue of the Board's decision on reasonable expectations of success and motivation to combine, I would highly encourage the panel to go back and look at the petition and the supporting expert declaration regarding what was said. There is a paragraph talking generally about the benefits of skins, FRP skins being lighter and more robust than was used in Loeffler. There is a discussion of panels generally being better, that the Onishi panels generally being better than the Loeffler installation. And then there is a conclusory sentence saying it would have been, quote, often you would not be particularly difficult to apply to Loeffler. That's the extent of the analysis. None of that addresses why you have two panels. None of that addresses how you can take the Loeffler process and apply it to the Onishi panel. Thank you very much for your time. I very much appreciate it. Thank you.